**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**ANDREA M. LOWE,**

    **Plaintiff,**

v.                                            Case No. 8:08-cv-2434-T-27TBM

**MICHAEL J. ASTRUE,
Commissioner of the United States
Social Security Administration,**

    **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

      The Plaintiff seeks judicial review of the denial of her claim for Social Security disability benefits.[1] Because the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, I recommend that it be affirmed.

I.

      Plaintiff was thirty-four (34) years of age at the time of her administrative hearing in December 2007. She stands five feet, nine inches tall. Plaintiff's educational background includes three years of college. Her past relevant work was as a corrections officer for the State of New York, a Wal-Mart cashier, a stock clerk, a fast food server, and a secretary. Plaintiff protectively applied for disability benefits in June 2005, alleging disability as of May

---

[1]This matter comes before the undersigned pursuant to the Standing Order of this court dated August 28, 1987. *See also* M.D. Fla. R. 6.01(c)(21).

1, 2005,[2] by reason of bi-polar disorder, clinical depression, and anxiety. Plaintiff's application was denied originally and on reconsideration.

The Plaintiff, at her request, then received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ"). The Plaintiff was represented at the hearing by a non-attorney representative and testified in her own behalf. Additionally, a vocational expert was called by the ALJ.

In essence, Plaintiff testified she is unable to work due to depression, an inability to get up in the morning, and panic attacks. Even a simple job in which she would not have to be around people would not be possible because she has difficulty waking in the morning, getting her children ready, and making deadlines. She last worked on a full-time basis in February 2005. At that time, she was working as an officer for the New York State Corrections in a medium security prison where she had worked for a little over eight years. Prior to that work, she had worked on and off doing cashier and fast food service jobs and also attended college.

Plaintiff testified that she is getting treatment for her mental health issues from Directions for Mental Health, including medication therapy, individual counseling once per month, and weekly group counseling. She was taking Lamictal for her bipolar disorder, Zoloft for severe clinical depression, Ativan for panic attacks, and Trazodone, but denies any side effects from these medications. Plaintiff was Baker Acted in August 2005 because she had stopped taking her medication and she was "in a manic" so her family wanted her to be

---

[2]The Decision references an onset date of March 16, 2005 (R. 14), but Plaintiff's application for disability benefits states that she became disabled as of May 1, 2005.

2

evaluated. She denies trying to kill herself. In conjunction with being Baker Acted, the State removed her children from her custody and they were placed with her mother for nine months because the State said she mentally neglected the children. She had been severely depressed and would lie on the couch or in bed all day, not able to provide meals for her family. Even when she did get her children back, she testified that she was still severely depressed and it was hard for Plaintiff to get the children to school in the morning.

As for her daily activities, Plaintiff spends much of the day sleeping. After getting the children off to school, she will go to doctors' appointments if she has any, and if not, she will just lie around all day. She sleeps five to seven hours during the day. She does not make dinner for the children every night because sometimes she is not up to it, is depressed, and cannot cook for them so they will have to prepare dinner for themselves. Her daughter will help her with the dishes. Plaintiff does not do well grocery shopping by herself because the crowds and congestion bother her such that she will end up walking in circles distracted. Her mother shops for her or will go with her to assist.

Plaintiff testified she has panic attacks once or twice per week brought on by stress. She experiences tightness in her chest like she is having a heart attack; she has pain on her right side and loses feeling in her hands and legs. When she is having an attack, she will try deep breathing, take her medication, and concentrate on something else. She attributes her stress to thinking about things, including that she is unable to work, what she went through in New York, and that she is unemployable. Also, she testified that her two children have

special needs. Her son is completely defiant and disobedient which causes her to have to repeat herself constantly to him and when he does not comply, she gets into a panic.

Plaintiff testified that the treatment she has gotten from Directions has helped a little although she states that she cannot see the light at the end of the tunnel. Notwithstanding, she is hopeful that through continued medication and counseling that she will eventually go back to work and also back to school to finish her degree. By her account, neither her doctors nor counselors have released her to go back to work. (R. 322-30).

The ALJ next took testimony from Tennyson Wright, a vocational expert ("VE"). After classifying Plaintiff's past work,[3] the VE testified on an assumption of an individual with no physical limitations on her ability to work, but limited to jobs which were low-stress. The VE opined that such person could perform Plaintiff's past work as a cashier stock clerk. With the added limitation that the position must have no significant interaction with the general public, the VE testified that such individual would be unable to perform any of Plaintiff's past relevant work. Given a combined hypothetical of an individual of Plaintiff's age, education, and work experience, in a low-stress position with no exertional limitations and no significant interaction with the public, the VE opined such individual could perform work in the local and national economy including work as an industrial janitor, a groundskeeper, or a kitchen helper/dishwasher, all of which have an SVP of two and are performed at the medium exertional level. With the added limitation that such individual had

---

[3]The VE identified Plaintiff's work as a cashier and stock clerk as light exertional, with an SVP of three; her work as a corrections officer as medium, semi-skilled work; and her employment as a shift manager as performed as medium exertional level, semi-skilled to skilled.

4

sporadic, impulsive displays of anger that appeared more than one-third of the time throughout the week, the VE testified that such individual would probably be precluded from competitive sustained employment. (R. 330-34).

Also before the ALJ were medical records outlining the Plaintiff's medical history. In summary, the records reveal that Plaintiff suffers no significant physical impairment, but she has mental impairments which affect her emotional functioning but not her cognitive and intellectual functioning. These matters are addressed below as necessary.

By his decision of January 24, 2008, the ALJ determined that while Plaintiff has severe impairments related to an affective disorder and a personality disorder, she nonetheless had the residual functional capacity to perform a full range of work at all exertional levels, provided she is limited to jobs that are low stress and in which she has no significant interaction with the public. Upon this finding and the testimony of the VE, the ALJ concluded that while Plaintiff could not perform her past work, she could perform jobs available to her in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 14-26). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental

impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that she has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that

the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

III.

Plaintiff makes three claims on this appeal. The first two relate to the report by Dr. Peter Bursten, Ph.D., who conducted a consultative psychological evaluation in October 2005. *See* (R. 274-79). Initially, she complains that the ALJ failed to properly credit the findings of Dr. Bursten who diagnosed her with Bipolar I Disorder, Panic Disorder without Agoraphobia, and Personality Disorder, NOS. More particularly, Plaintiff complains that the ALJ acknowledged only the bipolar disorder and her personality disorder but not her panic disorder as severe conditions. She urges her panic disorder is a severe condition affecting her attention and concentration, attendance, and interpersonal relationships, and the ALJ erred in not finding the same. Second, she urges that in assessing Plaintiff's residual functional capacity ("RFC"), the ALJ neither explained the weight that he gave to Dr. Bursten's report nor why he did not credit Dr. Bursten's findings regarding Plaintiff's maladaptive personality traits, underlying irritability and propensity for impulsive display of anger, hostility, and interpersonal conflict. She urges a remand is necessary for the ALJ to consider the effects of Ms. Lowe's panic disorder in combination with her other impairments. (Doc. 19 at 4-6).

7

The Commissioner responds that there is substantial evidence supporting the ALJ's decision that Plaintiff does not have a severe anxiety impairment. Specifically, the Commissioner argues that a diagnosis of a panic disorder based upon a single examination by a consultative examiner is not the same as a finding of a "severe impairment" particularly where, as here, there is no associated functional loss or limitations. In that regard, neither of Plaintiff's treating mental health providers, Dr. Baptiste or Ms. Burke, suggested Plaintiff's anxiety interfered with her ability to work. Additionally, the state agency psychologists, Dr. Hamlin and Dr. Foster, opined that Plaintiff did not suffer from any functional limitations as a result of her anxiety. In any event, the Commissioner urges that even if Plaintiff's anxiety disorder is severe, the ALJ's failure to conclude such was harmless error where the ALJ found in Plaintiff's favor at step two of the sequential evaluation process such that the ALJ found other significant impairments of a personality disorder and affective disorder and proceeded through the next steps of the sequential analysis. (Doc. 20 at 8-12).

The Commissioner further urges that the ALJ did consider Dr. Bursten's opinions, including the fact that Plaintiff suffered from mood instability, and maladaptive personality traits, finding as much and noting that she needed continued therapy for such. In fact, the ALJ accounted for Plaintiff's personality disorder by limiting her to jobs that are low stress and have no significant interaction with the public. Moreover, the Commissioner submits that there is no medical evidence supporting the underlying premise of Plaintiff's hypothetical that she has impulsive displays of anger that appear one-third of the work week. (Doc. 20 at 12-15).

Essentially for the reasons set forth in the Commissioner's response, I conclude that Plaintiff is not entitled to relief on these claims. Simply stated, when the whole of the medical record is considered, the ALJ could properly conclude that Plaintiff did not suffer a severe impairment related to panic disorders. Even if she did, to the extent that Plaintiff would claim error at step two of the five-step evaluation process, no error results at that step given the ALJ's findings that Plaintiff suffered other severe impairments. Furthermore, Plaintiff does not demonstrate any error in the ALJ's RFC assessment, such that there is error at step four or five of the evaluation process. As the Commissioner urges, the ALJ credited Plaintiff with mood swings and personality disorder and necessarily considered Plaintiff's maladaptive personality traits, and her underlying irritability and anger. Significantly, Plaintiff does not present additional functional limitations supported by the record not properly credited by the ALJ.

The Social Security Regulations set forth a five-step sequential evaluation process the Commissioner must follow in determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). The claimant bears the burden of establishing a prima facie case of disability at steps one through four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1241 n.10 (11th Cir. 2004). At step two, the claimant must show that she has a medically severe impairment or combination of impairments. *Id.* at §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At this step, the ALJ is called upon to determine whether a claimant's impairments are severe. 20 C.F.R. §§ 404.1520, 416.920. Under this regulation, if the claimant does not have an impairment or combination of impairments which significantly limits her ability to do basic

9

work activities, then she is not disabled. The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987) (citing 20 C.F.R. §§ 404.1521(b), 416.921(b)). Basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling, as well as capacities for seeing, hearing, and speaking; understanding, remembering and carrying out simple instructions; responding appropriately to supervisors and fellow employees and dealing with changes in the work setting; and the use of judgment. *Id*.

In application, the ALJ need only find a single severe impairment to satisfy the requirements at step two. *See Jamison v. Bowen,* 814 F.2d 585, 588 (11th Cir. 1987) (noting that, ". . . the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement at step two"). Here, the ALJ found Plaintiff has severe impairments related to an affective disorder and a personality disorder. This is adequate to satisfy step two, and the failure to find Plaintiff suffered a severe impairment by reason of her panic disorder is no cause for relief at this step.

At step four of the evaluation process, the claimant must show that her impairment or combination of impairments prevents her from performing her past work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An evaluation at this step requires the ALJ's assessment of the claimant's RFC which is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. §§ 404.1545(a), 416.945(a). The focus of this

assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Lewis*, 125 F.3d at 1440. Here, the Plaintiff successfully met this burden, and the burden of proof shifted to the Commissioner at step five. *Phillips*, 357 F.3d at 1241, n.10. At step five, the Commissioner must show that the claimant retains the RFC to perform work in the national economy, given her age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Plaintiff here urges that the ALJ failed to fairly assess her RFC in light of Dr. Bursten's opinions. Thus, she urges that the RFC is inadequate because it ignores Dr. Bursten's diagnosis of panic disorder without agoraphobia, and it fails to include his opinions on her maladaptive personality traits, including self-centeredness, irritability and anger.[4] Citing to the DSM-IV, Plaintiff argues that "the worry and disruption to attention and concentration from this panic disorder would be additional to that from her bipolar disorder, absence from work would be greater . . . and interpersonal relationships, such as those with co-workers, would be lost or disrupted due to this impairment." (Doc. 19 at 5). Because the ALJ did not consider these additional limitations or otherwise discount the diagnosis, Plaintiff urges the case should be remanded.

---

[4]In October 2005, psychologist Peter Bursten, Ph.D., conducted a psychological evaluation of Plaintiff on behalf of the Safe Children's Coalition of Pinellas County. By his conclusions, testing revealed that Plaintiff's intellectual functioning was within the average range, and she gave no indication of appreciable intellectual inhibitions. However, as for emotional and interpersonal functioning, he concluded that her testing, although "defensive," served to support her self-reports of anxiety and mood irritability, as well as "maladaptive personality traits/characteristics that include self-centeredness, codependent proclivities and underlying impulsivity/anger." He added, "it is probable that in this case affect or mood vacillates between anger and depression. This client is prone to impulsive display of anger and consequently, interpersonal relationships are inhibited." (R. 278-79). He gave a diagnostic impression for bipolar disorder, personality disorder, and panic disorder without agoraphobia.

11

Initially, Plaintiff is simply incorrect that the ALJ did not consider Dr. Bursten's report in full. The decision clearly reflects otherwise. Further, after careful review of the medical record, including the opinions of each mental health provider, I find no medical support for Plaintiff's claim of such additional limitations not considered by the ALJ either in his RFC or before the VE.[5]

It is entirely clear that Plaintiff's intellectual and cognitive functioning was essentially unimpaired by all accounts. While Plaintiff suffers emotional problems, no treating source ever concluded that such rendered her disabled from all work. Furthermore, the whole of the record does not necessarily support that Plaintiff actually suffered a panic disorder as such was reported to Dr. Bursten. By definition, panic disorder is a form of anxiety disorder defined in the DSM-IV according to certain criteria. Thus, "[t]he essential feature of Panic Disorder is the presence of recurrent, unexpected Panic Attacks followed by at least one month of persistent concern about having another Panic Attack, worry about possible implications or consequences of the Panic Attacks, or a significant behavioral change related to the attacks. . . ." *See* DSM-IV at 397. A review of the records from Dr. Kimberly Baptiste, M.D., who treated Plaintiff before she moved to Florida and the records from her therapist at Directions for Mental Health ("Directions"), after she moved to Florida, do not support a condition meeting this criteria. Indeed, Dr. Baptiste's reports for the period from March 2004 to February 2005, do not reflect a single claim of panic attacks nor treatment for the same. *See* (R. 299-310).[5] At Directions, Plaintiff was continuously diagnosed with

---

[5]The doctor's notes reflect treatment for knee and back pain and bipolar disorder. The notes reflect that at some point, the treatment for the bipolar condition was being provided by

bipolar disorder and borderline personality disorder.[6] (R. 215- 48). A review of those records from September 2005 to September 2007, reflect not a single claim of panic attacks.[7] When anxiety is referenced at all, it is generally noted that Plaintiff evidenced no sign of anxiety or that she denied the same. *See, e.g.* (R. 228, 232, 234, 239, 243, 245). While the ARNP therapists at Directions are not acceptable medical sources under the regulations, their reports of Plaintiff's subjective complaints and their observations of her condition do merit consideration on this claim. Thus, the whole of the record suggests Plaintiff's claim of suffering panic attacks is not supported. In any event, even if Plaintiff suffered from a severe panic disorder, she does not demonstrate limitations from that impairment not credited by the ALJ either in his RFC assessment or in his questioning of the VE.

By my reading of the decision, the ALJ credited much of Dr. Bursten's report. It is readily inferred that he discounted the Panic Disorder diagnosis for a lack of support in the record as a whole that Plaintiff suffered a significant degree of anxiety apart from her bipolar

---

a Dr. Schild. Significantly, Dr. Baptiste's records contain very limited reference to anxiety in any form. Thus, only in notes from March and May 2004, is there reference to Plaintiff suffering from depression and "anxiety syndrome (tense or nervous)." (R. 308, 310). Even with her conditions, in April 2004, Dr. Baptiste stated that Plaintiff was "ready emotionally to work at this time." (R. 309).

[6]Care at Directions was usually by an ARNP or counselor, not a psychologist or doctor. (R. 215-48).

[7]The closest claim for the same was made one time in October 2005, when she claimed a bad anxiety attack that resulted in hospitalization. (R. 243). However, as the ALJ noted in the decision, the therapist herself noted no signs of anxiety on this occasion. The only hospitalization record perhaps associated with that claim is the report from Morton Plant Hospital for an involuntary admission in July 2005. At that time, Plaintiff did claim to be under stress at her home. However, as the record reflects, she was discharged from the hospital because she did not meet the criteria for continued hospitalization. (R. 294-98).

13

condition and her personality disorder.[8]  I find no error requiring a remand with the ALJ's handling of this consultative examiner.

Most significantly, Plaintiff here fails to demonstrate from the medical record that she had greater limitations in attention and concentration or in her interpersonal relationships than that credited by the ALJ.  While she undoubtedly had and has limitations in these areas, such was fully acknowledged by the ALJ in crediting her with both bipolar and personality disorders and functional limitations for work at jobs involving low stress and no significant interaction with the public.  On this record, Plaintiff had worked for many years at several jobs, and while she could not return to her past work because of her emotional limitations, she does not demonstrate that her limitations prevented her from all other work.  In this regard, it is worth noting that Plaintiff had a fair opportunity to develop this argument before the ALJ and with the VE but elected not to.  In her representative's one hypothetical to the VE, she asked the witness to assume the ALJ's limitations plus an individual whose irritability and anger were such that she would evidence impulsive displays of anger more than one-third of the time at work.  On this hypothetical, the VE agreed no work would be available to such person.  However, as the Commissioner urges, there is no factual support for such a limitation and her past work history clearly undermines the assumption.  As the ALJ recognized, Plaintiff had shown improvement through therapy and indeed, the records from Dr. Baptiste and in particular, from Directions reveal the same.  Such improvement was admitted by the

---

[8]The ALJ did expressly state that "[m]ental status examinations revealed no evidence of anxiety . . . ," (R. 24), and a review of the various findings on mental status examination, as opposed to Plaintiff's subjective claims, supports this conclusion.

14

Plaintiff herself. Thus, in the end, I am obliged to conclude that the ALJ fairly examined the medical record and fairly assessed Plaintiff's RFC. As discussed below, Plaintiff's claims for severe disabling limitations in her emotional functioning were simply not borne out by the medical evidence. Plaintiff is not entitled to relief on these contentions.

Plaintiff next argues that the ALJ's credibility findings were unsupported and the cause should remanded for further consideration. More particularly, Plaintiff claims the ALJ concluded that she was less than fully credible because she (1) reported to Directions that she was beat up for no reason by a law enforcement officer in Clearwater, Florida, and she had been hospitalized under the Baker Act twice in a few days, when medical records indicate that Plaintiff reported these allegations to her doctor in New York while she was still living there; (2) reported being married to the father of her children and at other times, she reported not ever being married; and (3) reported leaving her job secondary to mental status when in fact she was suspended from her job as a corrections officer until the assault charges were cleared. Plaintiff urges that the purported "conflicting" statements regarding altercations with law enforcement officers are not conflicting at all as there were two separate incidents and reported as such. As to alleged conflict about whether or not she was ever married to the father of her children, Plaintiff submits that she has consistently described their relationship as having never been officially married, but given the fact that they were together for ten years and he fathered two children with her, they essentially had what is referred to as a "common law marriage." At best, Plaintiff submits it was a mischaracterization of the relationship, but not untruthful. As for her reason for leaving her job as a corrections officer, Plaintiff denies

15

testifying as to why she left her employment and she urges that there is no relevant evidence linking Plaintiff's testimony about leaving her job in New York in February 2005 and her onset of disability on May 1, 2005. Notwithstanding, the records clearly reflect that she was taken to an emergency room following the New York altercation rather than to jail, thus further establishing no valid basis for any "conflict" in the testimony. (Doc. 19 at 11-12).

The Commissioner responds that the ALJ's credibility finding was based on an assessment of the evidence as a whole and not solely on inconsistent statements regarding altercations with officers, her reason for leaving New York, and her marital status. Specifically, the Commissioner references medical evidence and Plaintiff's statements about feeling significantly better, doing "pretty good," and not suffering from depression, as appropriate reasons for the ALJ's discrediting Plaintiff's subjective complaints. Other records reflected that Plaintiff reported sleeping better, no mania or depression, and eating healthier which further support that her alleged symptoms were only partially credible. Even conceding the ALJ erred in finding certain conflicts in her self-reports, the ALJ properly assessed Plaintiff's credibility based on the medical evidence and other appropriate factors. (Doc. 20 at 15-18).

Where an ALJ decides not to credit a claimant's testimony about [pain], the ALJ must articulate specific and adequate reasons for doing so or the record must be obvious as to the credibility finding. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995); *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the

record. *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987). The lack of a sufficiently explicit credibility finding may give grounds for a remand if the credibility is critical to the outcome of the case. *Smallwood v. Schweiker*, 681 F.2d 1349, 1352 (11th Cir. 1982). Thus, where credibility is a determinative factor, the ALJ must explicitly discredit the testimony or the implication must be so clear as to amount to a specific credibility finding. *Foote*, 67 F.3d at 1562.

Initially, I agree with Plaintiff that certain of the specified "conflicts" are a misreading or mischaracterization of the record and thus should not have been used to discount Plaintiff's credibility. Thus, I agree that the ALJ incorrectly found an inconsistency in Plaintiff's statements concerning confrontations with law enforcement. The record reveals that Plaintiff had or at least claimed to have had run-ins with law enforcement in both New York and later in Florida. *Cf.* (R. 300 and 241). Thus, she claimed separate incidents, and the ALJ erred in concluding otherwise. As for the report and claim of two hospitalizations under the Baker Act within a few days of each other, the ALJ accurately reflected on the records which revealed only one such hospitalization. On that admission, the ALJ correctly noted that the Plaintiff herself claimed she should not be there and the doctor released her because she did not meet the criteria for such admission. Such does speak to the severity of her mental state, and regardless of how the ALJ characterized this statement, as conflicting or otherwise, the ALJ could properly consider the same and otherwise question why records from the second Baker Act were not before him if such had occurred.

I agree also that the ALJ erred in discounting her credibility for conflicting statements about her marital status. While the records do support conflicting descriptions of her marital status, when the whole of the record is considered, it is clear Plaintiff had no intention of misleading anyone as to her relationship with the father of her children and any reference to him as her "husband" or "ex-husband" as opposed to "boyfriend" or "paramour" reflects little about her credibility concerning her mental state. In fairness to Plaintiff, if the ALJ believed her marital status was of significance, he should have made inquiry of Plaintiff about it.

On the conflict between her report that she left her job in New York secondary to mental status issues when in fact she was suspended from her job as a corrections officer until the assault charges were cleared, it is unclear what report the ALJ is referencing for his conclusion that she left due to mental status. Thus, the "conflict" is difficult to assess. However in my view, her reasons for leaving that job were not wholly irrelevant to the issues on this benefits claim. According to medical records, Plaintiff did advise Dr. Baptiste in February 2005, that she was suspended from her job as a corrections officer until her assault charge was cleared. At that time, she was being treated for bipolar disorder and back and knee pain but had been cleared to work. (R. 299). Shortly after this report, Plaintiff moved to Florida and as noted above, filed for disability benefits June 2005, alleging disability by reason of her mental state as of May 2005.[9] Given the close proximity in time of these events, I cannot say her reasons for leaving the corrections officer job were not relevant to her

---

[9] I note that after moving to Florida, Plaintiff gave a report to Directions that she left New York due to domestic violence. (R. 239).

credibility regardless of any purported conflict or lack thereof. Thus any error in this regard is harmless.

More significantly, a fair reading of the decision reflects that the ALJ's credibility determination did not hinge on these disputed findings alone, but rather was based on the record as a whole. Thus, after reviewing the available medical record, correctly noting the applicable standard of review for subjective complaints, and crediting Plaintiff with significant stress in her life and the need for continued treatment for management of mood stabilization and supportive psychotherapy, the ALJ stated,

> However, the undersigned finds that while the claimant continued to be treated for her bipolar disorder she has been reported doing well on her medicine regime. The claimant herself stated on several occasions she was doing well. Mental status examinations revealed no evidence of anxiety and cognitively the claimant was reported intact. She has remained free from hospitalizations since July 2005. No treating or examining practitioner has found the claimant disabled or unable to engage in work activity. In sum, the objective medical evidence does not show the degree of symptoms and limitations alleged, nor does the medical and non-medical evidence show that the claimant's mental status would reasonably be expected to result in functional loss to the degree alleged.

(R. 24). These conclusions provide more than adequate basis to discount Plaintiff's subjective testimony regardless of any error the ALJ may have made in finding certain reports by Plaintiff to be in conflict. No treating or examining doctor ever found her disabled or suggested functionally disabling limitations or restrictions. When the full course of her mental health care and therapy is considered, she responded well, and admitted as much. Her past work history suggests that her mental and emotional problems did not prevent her from

19

performing her duties. Even though she can no longer do those jobs, she makes no showing on this appeal that the ALJ erred in concluding her subjective complaints were overstated or in his conclusion, based on the VE's testimony, that she could do other work available in the local and national economy.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, and I recommend that it be affirmed. I further recommend that the Clerk be directed to enter Judgment in favor of the Defendant and to close the file.

> Respectfully submitted this
> 1st day of February 2010.
>
> THOMAS B. McCOUN III
> UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.

Copies furnished to:
The Honorable James D. Whittemore, United States District Judge
Counsel of Record